## Newton v. Commonwealth.

(Decided March 13, 1914.)

### Appeal from Daviess Circuit Court.

1. Indictment—Section 1199 Kentucky Statutes—General Charge that Goods Had Been Stolen Sufficient Under.—In framing an indictment under Section 1199, Kentucky Statutes, for knowingly receiving stolen goods, the same technical particularity in describing the original larceny is not required as would be in an indictment charging the original crime. A general charge that the goods had been stolen before defendant received them is sufficient.

2. Indictment—Receiving Stolen Goods.—It is not necessary that such an indictment should name the thief or charge that defendant received the goods from such thief.

3.  Indictment—Description.—A general description of the property originally stolen is sufficient in such an indictment.
4.  Indictment—Receiving Stolen Goods.—An indictment for knowing-ly receiving stolen goods which charges the goods were originally stolen from the Owensboro Wagon Company is a sufficient allegation of ownership by that company.
5.  Indictment—Receiving Stolen Goods—Conversion.—Under our Statutes denouncing the offense of receiving stolen goods it is not an essential element of the offense that there should be a conversion by the receiver or that he should receive same with the purpose of depriving the owner thereof.
6.  Indictment—Receiving Stolen Goods—Agent—When Principal Guilty.—Where one's agent acting for him and under his orders receives stolen goods in one county and conveys them to his principal in another county, the principal is guilty of knowingly receiving stolen goods in the county where they were so received by his agent.

LA VEGA CLEMENTS for appellant.

JAMES GARNETT, Attorney General, D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellant was indicted in the Daviess Circuit Court, charged with knowingly receiving stolen goods, and upon his trial was found guilty and sentenced to the penitentiary. His motion for a new trial was overruled, and he appeals.

The indictment against him is as follows, to-wit:

"The grand jury of Daviess County, in the name and by the authority of the Commonwealth of Kentucky, accuse Rollie Newton of the crime of receiving stolen property of greater value than $20.00, knowing the same to have been stolen at the time he received said property, committed in manner and form as follows, to-wit:

"The said Rollie Newton did, in Daviess County, and on or about the ............ day of August, 1913, unlawfully and feloniously receive seven wagons which were then and there of greater value than $20.00, which wagons had theretofore been stolen from the Owensboro Wagon Company, a corporation existing under the laws of the Commonwealth of Kentucky, and doing business at Owensboro, Daviess County, Kentucky, and that said defend-and did, knowing at the time he received said wagons that they had been so stolen, as aforesaid, from said Owensboro Wagon Company; contrary to the form of the

Statute in such cases made and provided, and against the peace and dignity of the Commonwealth of Kentucky."

This indictment was found under section 1199, Kentucky Statutes, which is as follows, to-wit:

"Whoever shall receive any stolen goods, chattels or other thing, the stealing whereof is punished as a felony or misdemeanor, knowing the same to be stolen, shall be liable to the same punishment to which the person stealing the same is, by law, subjected. Such offenders may be convicted, though the principal offender has not been convicted."

The gravamen of the offense denounced by this statute is knowingly receiving stolen goods, and is a separate and distinct offense from the larceny itself. Keeping this in mind, the five objections to the sufficiency of the indictment will be considered.

It is first urged that there is no sufficient description of the larceny of the wagons alleged to have been received by appellant, and no sufficient allegation that there had been a larceny previous to the receiving by him of the property, and that it does not allege that the wagons had been feloniously taken or carried away.

In framing an indictment, under a statute which denounces a crime based upon the commission of a previous and different crime, the same technical particularity in describing the previous crime is not required as would have been in an indictment charging such original crime. Commonwealth v. Wilde, 5 Gray (Mass.), 8; State v. Druxinman, 34 Wash, 257; State v. Makovsky, 120 Pac. Rep., 531.

In this indictment it was unnecessary to charge in technical language the commission of the offense of larceny committed previous to the offense with which appellant is now charged; a charge in general language that the goods had been stolen before he received them was sufficient.

It is next objected that the indictment neither names the thief nor charges that appellant received the wagons from the thief. But such allegations are entirely unnecessary; the gist of the offense is in receiving goods knowing them to have been stolen, and it can in no sense be material who stole them or whether they were received from the thief. Roberson's Criminal Law, Vol. 1, sec. 448.

The further objection urged is that there is no sufficient description of the stolen property; but, the charge that the seven wagons, had theretofore been stolen from the Owensboro Wagon Company, was a sufficiently accurate description in such an indictment. It is unnecessary to charge the facts technically constituting larceny against the original takers.

It is again contended that the indictment does not name the owner of the property; but, the indictment does charge that the wagons had theretofore been stolen *from* the Owensboro Wagon Company, and in such an indictment the allegation of ownership being merely for the purpose of identifying and describing the stolen property, and not being an essential element of the crime denounced by the Statute, the same degree of accuracy as might be required in an indictment for the original larceny is not demanded. Certainly it may be fairly inferred when one is charged with stealing *from* another that such other has either been deprived of the ownership or possession of the stolen property.

Finally it is contended that the indictment is insufficient, because it fails to allege that the wagons were received by the defendant for the purpose of converting them to his own use, or of depriving the owner thereof; it is sufficient to say in answer to this that, under the Statute quoted, it is not an essential element of the offense that there should be a conversion by the receiver of the stolen goods, or that he should receive the same with the purpose of depriving the owner thereof.

The indictment in all its essential elements notified the defendant in reasonably clear and accurate language of the charge against him, and is not open to any just criticism.

It is further urged that appellant's motion for a peremptory instruction should have been sustained for three reasons. (1) Because none of the property found in appellant's possession was proven to have been stolen. (2) There was no evidence showing that he ever received a wagon knowing it to have been stolen. (3) Because there was no evidence of his having received any property, stolen or otherwise, in Daviess County. The correctness of these contentions involves an examination of the evidence.

Appellant, during the summer of 1913, lived at Fordsville in Ohio County, some miles from Owensboro, and during July and August sold to numerous persons in

that neighborhood seven new wagons made by the Owensboro Wagon Company; that Company operated a wagon manufacturing concern at Owensboro, and its only agents at Fordsville were Smith & Cooper, and appellant had no business connection whatsoever with the company and never had, and the company had never sold or shipped him any wagons; he sold each of the seven wagons for a price considerably less than they could have been bought from Smith & Cooper, the authorized agents, and when requested about how he could do this he claimed to have had, "a kind of an inside turn;" while he claimed to some persons that the wagons he sold were second-hand wagons; the evidence is conclusive that they were all new. In fact some of them were seen in his barn before they had ever been set up, that is the several detached parts of the new wagon had never been put together. The wagon company learning that their goods were being sold at Fordsville by persons other than their authorized agents, and having about that time found a shortage of wagons in its warehouse, sent a policeman to Fordsville to investigate. The policeman found two one-horse wagons in appellant's barn in the early part of the night, neither of which had ever been set up. But, upon his return there the next morning he found these two wagons had been removed during the night to a barn on another's place some half or three-quarters of a mile away. The two wagons so found together with five others previously sold were all gotten together by the policeman and returned to the Owensboro Wagon Company, and the appellant, in each instance where he sold a wagon, returned to the purchaser the purchase price, and has never made any claim against the Owensboro Wagon Company for any part of same.

The shipping clerk of the wagon company testified that the seven wagons so returned from Fordsville had never been sold by the company nor taken from its possession in the regular course of business.

Appellant's son and Tobe Smith having been accused of stealing these wagons, appellant said to the policeman that there was no use of arresting either of those boys, that he sent them down there after the wagons and that they had done just what he had told them to do, and there was no use of jumping on the boys; that he would take it on himself. On at least two occasions appellant's son, Arnold Newton, was seen going towards Owensboro, riding one horse and leading another, both horses having

harness on, and identified as horses of appellant. A liveryman at Owensboro testified that upon two occasions appellant and his son came to his barn in the day-time and left there a team of horses with harness on them, and upon each occasion they left there some time in the night. Another witness, who lives near Fordsville, stated that about eleven o'clock one night that he saw appellant and his son pass his house with a two-horse wagon and a one-horse wagon which looked to be new, and that he recognized appellant's horses, and that this was about the time the wagons were gathered at Fordsville, and the two wagons moved in the night from appellant's barn to that of another.

Another witness testified that in July or August, 1913, he was hauling lumber from Philpot in Daviess County to Owensboro, and that he would leave Philpot before daylight, and that on two or more occasions he met some one going towards Fordsville, driving a team hitched to new Owensboro wagons. He could not identify the driver, but states that once he saw a boy twelve or fourteen years of age on the wagon who appeared to be asleep.

Appellant did not testify and offered no evidence whatever.

(1) Can it be said from this evidence that none of the property traced to Newton's possession was proved to have been stolen?

The evidence of the shipping clerk that none of these seven wagons were sold to Newton, that none of them were ever sold by the company in the usual course of trade; that about that time, when their stock was checked up, that several wagons were found to be missing, when taken in connection with the evidence that appellant and his son about the same time had upon at least two occasions put up their horses with the harness on them in a livery stable at Owensboro, and had left there upon each occasion late at night; when taken in connection with the evidence that a boy answering the description of appellant's son had been seen in the night-time at or near Philpot, which is on the road from Owensboro to Fordsville, driving a team hitched to new Owensboro wagons; and when considered in the light of the evidence that appellant, who had no business, whatsoever, with the Owensboro Wagon Company, was selling new wagons of its make for a less price than they could be sold by its regular agents; when all of these circumstances are considered with the

declaration of appellant himself, that he sent the boys down there after the wagons, and that they had done just what he had told them to do, the jury was certainly justified in drawing the conclusion that some or all of these seven wagons had been stolen from the Owensboro Wagon Company.

In the light of the testimony which we have quoted, it would seem to be useless to respond to appellant's suggestion that there was no evidence offered to show that he had ever received a wagon, knowing it to have been stolen.

But, it is urgently insisted that there is nothing in the evidence to show that appellant had ever received any property stolen or otherwise in Daviess County, and that therefore the offense of receiving stolen property, being a separate and distinct offense from the larceny itself, he could not be convicted in Daviess County, even if he did receive stolen property in Ohio County.

It is true there is no direct evidence that appellant ever received any one of the wagons in Daviess County or was ever in possession of any of them in that county, but, from the fact that he and his son were together at Owensboro upon two different occasions and put up their horses with the harness on in a livery stable, and upon each occasion left there in the night; and the further fact that appellant's son was seen in Daviess County in the night-time driving a team hitched to a new Owensboro wagon, when taken in connection with appellant's declaration that he sent the boys down there after the wagons, and they had done just what he had told them to do, the jury was authorized to infer from all these circumstances that the boys had received the wagons in Daviess County, and that they were acting as the agents of appellant, and that when they had so received them in Daviess County, it was equivalent to a receiving by appellant himself.

The evidence in this case is wholly circumstantial, and for that reason we have gone into it with unusual care; but after a careful study and review of all the facts and circumstances we cannot say that the jury was not authorized to reach the verdict it did. Upon the whole case we see no error to the substantial rights of appellant, and the judgment is therefore affirmed.