## Hamm v. Commonwealth
(Decided Nov. 12, 1937.)

LENA M. CRAIG and J. A. EDGE for appellant.

HUBERT MEREDITH, Attorney General, and J. K. LEWIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Affirming.

The appellant was convicted in the Fayette circuit court on a charge of grand larceny (theft of an automobile) and his punishment fixed at 5 years in the penitentiary.

A reversal of the judgment is asked upon two grounds: (1) That the evidence is insufficient to sustain a conviction and the court erred in failing to sustain appellant's motion to instruct the jury to find him not guilty, and (2) the evidence is at variance with the allegations of the indictment relating to the ownership and description of the stolen automobile. We will consider these complaints in the order named.

Sidney Kinkead, a member of the Kinkead-Wilson Motor Company, from which the automobile was taken, testified that on or about the 21st day of March, 1937, a Nash sedan automobile of the value of about $400 was taken from the inclosed "used car lot" which is adjacent to the Kinkead-Wilson garage; that he last saw the automobile at about 6 o'clock p. m. on the night it was taken from the lot, and he next saw it at about 7 o'clock on the following morning and it had been wrecked and practically demolished.

Milton Lawwill, a county patrolman, testified that he had a call at about 6:30 o'clock on the morning of the 22d of March and was informed that there was a car wrecked out on the Leestown Pike, and he proceeded to

go to the place, about 3½ miles out of Lexington, and found the car wrecked and found in it a quarter of a side of beef and some canned goods and some corned beef; that he had the car taken to a nearby garage and it was identified as the car that had been taken from the Kinkead-Wilson Motor Company the night before. Vernon Wash, who lived about 3½ miles from Lexington on the Leestown Pike, testified that about 5 o'clock in the morning of March 22d he heard a car pass his house and then heard a noise indicating that it had been wrecked. He got up and looked out and saw the car about 100 yards from his house and saw the appellant get out of the car but saw no one else in or about the car with him. Appellant then came up the road toward his house and stopped a few minutes and then came to his house and rapped on the door. Wash answered the call and appellant said he wanted to use his telephone and he told him he had no phone, and he then asked where there was a phone and Wash told him that a Mr. Anderson up the road a piece had a phone and appellant then asked if there was a filling station down there, and he then went toward the Narcotic Farm. After a short time Wash went to the wrecked car and while he was there a taxicab came up and stopped and appellant was in the taxicab and Wash said to him, "You are one of the men that was in this wreck and he said he was not and I must be mistaken, and then the boy that was driving the taxi put the gas to his car and went on. I knew that he (meaning appellant) was the boy that came to my door." The county patrolman came next and Wash told him about having seen appellant. Wash was asked that if he had any doubt as to appellant being the man whom he saw get out of the car and come to his house and then again return in the taxicab as related above, and he said there was no doubt about it and he was positive that appellant was the man.

Appellant denied taking the automobile or being in or about it at the time it was wrecked, or that he was on the Leestown Pike on that night or morning that the car was taken, and denied that he saw Mr. Wash or was at his place and denied having any connection with or knowledge of the theft of the car. He said that on that night he had been out at the Lynnwood Inn and left there about 2 o'clock and went to the Grand Cafe on North Limestone. He testified that he saw a number of people there about the Grand Cafe and detailed his

whereabouts on the night and morning in question, and, to some extent, he was corroborated by a number of his companions and associates.

Without stating further details of the evidence it is sufficient to say that it was conflicting. Had the jury seen fit to believe appellant and his witnesses, he was entitled to an acquittal. However, we have evidence of the witness Wash, who testified positively that he saw appellant get out of the wrecked car and saw no one else in or about the car.

It is seen that there is proof that appellant was in possession of the stolen automobile. This court has repeatedly held that a conviction will be sustained upon proof that a person charged with larceny was found in possession of the stolen property. Davis v. Com., 191 Ky. 242, 243, 229 S. W. 1029; Jacobs v. Com., 260 Ky. 142, 84 S. W. (2d) 1, 2. In the Jacobs Case, supra, the stolen property was found in the possession of Jacobs, and, like appellant in the present case, Jacobs denied having anything to do with the theft of the property and introduced a number of witnesses to prove an alibi. After reviewing the evidence, the court said:

"The rule is that possession of stolen property shortly after the theft is not only presumptive evidence of guilt casting upon the accused the burden of showing his innocence by explaining his possession to the satisfaction of the jury, but is of itself sufficient to sustain conviction for larceny."

According to the evidence of Wash, appellant was in possession of the stolen automobile and he then had the burden of explaining such possession, which he failed to do, except to deny that he was in possession of it or had any connection with or knowledge of the theft of it. Under the authorities cited above and many others which might be cited, there is no escape from the conclusion that the evidence is sufficient to sustain the verdict. It is the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony, and it has the right to believe any witness or set of witnesses it may see fit, and the court has no right to disregard a finding of fact by a jury where there is any evidence of a probative and substantial nature to sustain the jury.

It is next insisted that the indictment charged ap-

pellant with the theft of a 1936 model Nash sedan automobile, owned by the Kinkead-Wilson Motor Company, a partnership, whereas the proof showed that the stolen automobile was a 1934 model Nash sedan and that the Kinkead-Wilson Motor Company was a corporation. It is insisted that there was a fatal variance between the charge and the proof, and to sustain this contention the case of McBride v. Com., 13 Bush (Ky.) 337, is cited and relied on. In the peculiar facts and circumstances of that case it was held that the description of the stolen property was necessary to identify the act constituting the offense charged. We do not think that the present case falls within that rule. It is shown that a Nash sedan automobile was stolen from the Kinkead-Wilson Motor Company and the car found in possession of appellant was the same car, thereby identifying the act constituting the offense charged. The particular model, or year in which the car was made, is not material. Boyd v. Com., 59 S. W. 518, 22 Ky. Law Rep. 1017; Lowery v. Com., 191 Ky. 657, 231 S. W. 234; Cannon v. Com., 243 Ky. 302, 47 S. W. (2d) 1075, 1077.

In the Boyd Case, supra, the indictment charged that the horse alleged to have been stolen was blemished in the left eye, whereas the evidence established that he was blemished in the right eye. The McBride Case, supra, was relied on by the defendant-appellant in that case. The court said:

"The description of the color of the horse and of his blemishes was not material, unless it was necessary to identify the act constituting the offense charged, as, in the case cited [McBride Case], where ownership was alleged in one person, and the proof showed ownership in another. * * * We are of the opinion that the blemished eye was not descriptive of the identity of what was legally essential to the charge of stealing a horse."

In the Cannon Case, supra, the indictment charged the larceny of two turkey hens, but the proof established that one turkey hen and one turkey gobbler had been stolen. It was held that the variance was not fatal. The court said:

"Variances are regarded as material in criminal cases only when they mislead the defendant in mak-

ing his defense, and may expose him to the danger of being again put in jeopardy for the same offense.''

See, also, Johnson v. Commonwealth, 87 Ky. 189, 7 S. W. 927, 928, 10 Ky. Law Rep. 100, where it is said:

"It is therefore material that the owner of the property injured or taken should be described in the indictment with no more precision or certainty than necessary to inform the accused of the actual offense charged against him, and to bar a second conviction therefor.''

It is seen that there is no merit in this complaint.

With respect to the complaint that the Wilson-Kinkead Motor Company, from which the car, was stolen, was a corporation and not a partnership as charged in the indictment, is likewise unmeritorious. In Lowery v. Commonwealth, supra, the indictment charged that the storeroom of Levy's was a corporation but the evidence established that it was a copartnership, and it was held that the variance could not possibly have misled the defendant in making his defense, nor could he again be placed in jeopardy for the same offense. The same reason is applicable to the present case. It was shown that the Kinkead-Wilson Motor Company was the owner of the stolen automobile and it is not material whether such owner is a corporation or a partnership, since such technicality could not have misled the appellant.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.