# Rogers v. Commonwealth.

Jan. 13, 1942.

Webb & Webb, J. D. Via and E. H. Lannom for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant has prosecuted this appeal from a judgment of the Hickman circuit court sentencing him to the penitentiary for a period of one year under an indictment charging him with the crime of hog stealing. In the motion and grounds for a new trial a number of alleged errors are assigned, among which is that the evidence is insufficient to sustain a conviction, hence, the court erred in refusing to sustain appellant's motion to peremptorily instruct the jury to find appellant not guilty. The facts are substantially these:

On the morning of September 22, 1938, J. W. Salmon, who lives in Hickman County, Kentucky, discovered that four of his hogs had been stolen from a pen on his premises. He reported the theft to Dick Montgomery, sheriff of Hickman County, and upon investigation they found trails or signs of a motor vehicle indicating that the hogs had been taken or removed in a motor truck. The premises of Salmon are near the Tennessee

line and Montgomery, the sheriff, went to Union City, Tennessee, where he contacted the sheriff of that county and the hogs were located in a pen on the premises of appellant. After some discussion and investigation, Salmon procured from a justice of the peace a writ of delivery for the hogs. Appellant being convinced that the hogs belonged to Salmon, agreed to deliver them to him. However, negotiations were entered into between appellant and Salmon for a purchase of the hogs and they agreed upon a price of $52.50, which appellant paid to Salmon and kept the hogs.

Later an indictment was returned by the grand jury of Hickman County charging appellant with the theft of the hogs and it appears that upon the first trial of the case the jury failed to agree, and the next trial resulted in a conviction of appellant as indicated above. The only proof adduced by the Commonwealth tending to connect appellant with the theft of the hogs was that they were found in his possession which, of course, created a prima facie presumption of guilt. At the conclusion of the evidence for the Commonwealth appellant moved the court to instruct the jury to find a verdict of not guilty, which motion was overruled, and again at the conclusion of all the evidence the same motion was offered which the court also overruled.

The appellant resides near Union City, Obion County, Tennessee, about thirty miles from Clinton, Kentucky, and the Salmon farm is some distance from Clinton. There is no evidence that appellant was familiar with the farm or its location, but on the contrary, he testified that he did not know of its location and had never been in Hickman County except that he passed through Clinton in Hickman County but did not know where anybody lived.

Appellant testified that he purchased the hogs from a man who brought them to Union City on a truck on the morning of September 22 and he paid him $50 therefor—$35 being paid in cash, and a calf valued at $15. He said he offered to give the man his check for the $35 but the man refused to take a check, and assigned as his reason therefor that he "wanted to be going" and did not have time to wait until the bank opened. It appears that there was a stock sale at or near Union City on that day and appellant was interested in the stock sale, and after having agreed with the man on the purchase price of the

hogs, he instructed him to take them to his farm which was located near Union City and to put them in his pen. He further told him that the calf was there on the premises and if he did not want the calf at the price of $15 he would pay him the balance in cash. He said it appeared that the man was familiar with the location of his farm and he thought that he might have bought stock of him on previous occasions. He gave a description of the man and the truck. The man did not return to Union City and when appellant went home he found the hogs in the pen and the calf was not there. It appears from the evidence that it was not unusual for people to bring live stock to Union City and the stock yards thereabouts for sale. Appellant said that he purchased the hogs in good faith without knowing or as much as suspecting that they had been stolen. It appears that he paid a fair market value for the hogs.

Appellant was corroborated by a number of witnesses. Dr. Youngblood, a veterinarian, who conducted a stock yard, testified that in the early morning of the day which appellant claims he purchased the hogs, a man whose name he did not know brought the hogs to the stock yard in a truck and offered to sell them to him but he refused to purchase the hogs, giving as his reason therefor that he made his purchases at the usual sales and that if he bought stock at private sales it might hurt his business. The witness also gave a description of the man and the truck, which was the same as that given by appellant.

Frank Wheeler, who lived in Union City, testified that on the morning of September 22 he was sitting on a counter on the outside of a store and a man drove up in a truck with some hogs in it and offered to sell them to him, and he told the man that he could not "buy a sandwich" and said to him "why don't you take them to the packing house," and the man said that he had been up there but they would not buy the hogs because one of them was not well; that he then saw appellant approaching, and knowing that appellant was engaged in buying live stock, he called appellant and mentioned the fact that the man had hogs for sale, and appellant and the man then entered into a conversation and he heard the man say he wanted $50 for the hogs and appellant said "they are a little high," and he then heard something said about a calf and $35. He further said that appellant

started to pay the man with a check and the man said he did not have time to wait for the bank to open, and appellant took out his pocket book and gave the man two $10 bills and went over to Price's restaurant and asked Price, or the man in charge of the restaurant, to loan him $15 and the man gave appellant three $5 bills and appellant paid the man $35 in cash and then asked him, the witness, to show the man where he, appellant, lived and appellant said he was in a hurry to get back to the stock pen. The witness showed or told the man how to go to appellant's farm and he went in that direction and he did not see him anymore. He further said that he heard appellant tell the man that if he did not want the calf at the price of $15 he would give him that sum in cash when he came back to the stock pen.

Herbert Ketchum, who was an employee in Price's restaurant, testified that appellant came into the restaurant at the time and on the occasion testified to by appellant and Wheeler, and asked him to loan him $15 with which to pay for some hogs, and he loaned him that sum. He said he saw a truck on the street and the best he could tell there were hogs in it, and saw appellant talking to the man in charge of the truck. He said this was at about 7:30 or 8 o'clock in the morning. The evidence of the foregoing witnesses is wholly uncontradicted, and none of the witnesses were impeached, nor anything presented or offered by the Commonwealth indicating that the witnesses were not telling the truth.

In addition to the evidence of appellant and the other witnesses who corroborated him, six residents and citizens of Union City, of various walks of life such as merchants and other business men, officials and ex-officials, all testified that they had known appellant for many years and that they were acquainted with his reputation for general moral character, honesty and integrity, and that his reputation in all respects was good. No evidence was offered to contradict this evidence.

We are not unmindful of the rule that the possession of stolen property shifts the burden to the person who has possession of same to make a satisfactory explanation of the circumstances and facts under which the property came into his possession. Stated differently, possession of stolen property creates only a rebuttable presumption of guilt rather than a conclusive one. We think that the evidence of appellant and the witnesses

who fully corroborated him in all the details and facts establishes beyond peradventure of doubt that appellant purchased the hogs in question of the unknown man referred to by the witnesses. To hold that the evidence presented in this record is sufficient to sustain a conviction would be tantamount to holding that possession of stolen property is conclusive evidence of guilt rather than prima facie or a rebuttable presumption which may be explained. We could hardly imagine a more satisfactory explanation of possession of stolen property than that offered and established by appellant. It is our view that the prima facie presumption of guilt arising from the mere possession of the hogs in question was so completely overcome and destroyed by the evidence of appellant and his witnesses that there is left only a mere scintilla of evidence or suspicion of guilt which, of course, is insufficient to sustain a conviction. The scintilla rule applied in civil cases in this jurisdiction is also applicable to criminal cases. Privitt v. Commonwealth, 271 Ky. 665, 113 S. W. (2d) 49, 52. In the case, supra, it is said: ''The trial judge has the same right to give a peremptory instruction in a criminal proceeding that he has in a civil action,'' citing Blankenship v. Commonwealth, 147 Ky. 768, 145 S. W. 752. See also Commonwealth v. Murphy, Ky., 109 S. W. 353; Davenport v. Commonwealth, 285 Ky. 628, 148 S. W. (2d) 1054.

In Nugent et al. v. Nugent's Ex'r et al., 281 Ky. 263, 135 S. W. (2d) 877, it was held that a mere scintilla is insufficient to take a case to the jury and in such cases it becomes the duty of the court to give a directed verdict. Many other authorities, criminal and civil, might be cited, but it would serve no useful purpose to further encumber this opinion by citing cumulative authorities. The Assistant Attorney General, who briefed the case for the Commonwealth, frankly admits that in his opinion the evidence is insufficient to sustain a conviction and does not insist upon an affirmance of the judgment.

We are constrained to the conclusion, therefore, that the evidence is insufficient to sustain a conviction, and upon another trial of the case if the evidence is the same or substantially the same, the court will peremptorily instruct the jury to find a verdict of not guilty.

The judgment is reversed and remanded with directions to set it aside and grant appellant a new trial, and for proceedings consistent with this opinion.