# Wheeler v. Commonwealth.

### May 14, 1943.

W. H. Meade for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On the night of May 7, 1942, the storehouse of M. L. Gover in Somerset, Kentucky, was broken into and there was taken therefrom 165 men's suits; about 50 men's shirts; a number of ties, and a few pairs of shoes. Nine days thereafter appellant and defendant below, Roe Wheeler, was indicted jointly with others, in which they were accused of the breaking of the building and feloniously taking therefrom the above property, which is an

offense denounced by Section 1164 of Carroll's Statutes, Section 433.190 of KRS. At his trial appellant was convicted and punished by confinement in the penitentiary for five years. His motion for a new trial was overruled and sentence pronounced, from which he prosecutes this appeal, urging for a reversal only the one ground, that the evidence was insufficient to sustain the conviction, and for which reason the court should have directed an acquittal, which was asked at the trial.

The facts are practically undisputed, except appellant testified that he was not guilty, and that he was at his home in Paintsville at the time of the breaking of the Gover store in Somerset, but no other witness sustained that alibi. Appellant was then and for sometime prior thereto engaged in the business of operating a hotel in Paintsville. Some show windows were in front of its office or reception room. For some time prior thereto appellant had annexed to his hotel business that of a clothier, exhibiting his wares in the show windows of his hotel building, and he claims that the men's furnishing articles in which he so dealt were obtained from peddlers passing through the country. Some days before the breaking of the Gover storehouse there was a similar offense committed in Carrollton, Kentucky, where like goods were taken from the storehouse of one Jasper. Other similar offenses had recently been committed within a limited radius of Paintsville.

Immediately upon the breaking of the Gover storehouse information was spread throughout the eastern part of Kentucky and Mr. Gover was informed of defendant's business and of his exhibiting men's clothing in the show windows to his hotel. A search warrant was obtained to search every room in that building, which was later done by some peace officers, and at which the son of M. L. Gover—who was clerk in his store—was present, and also Mr. Jasper, whose building had been broken into in Carrollton. The latter identified the clothing in the window as his property—it having unerring marks of identification thereon. Appellant was then asked by one of the officers, in the hearing of others present, if the clothing in his show window was all that he had, to which he gave an affirmative answer. The officer then told him that the search warrant which he had authorized him to search every room in the building, and when so informed appellant said that he had some more in a room upstairs,

to which he and the others then and there assembled, repaired. In one of the rooms of the hotel, which was locked, they found—after appellant unlocked it—65 suits of men's clothing which were clearly identified as a part of the property taken from the Gover store. The suits were stacked on the floor upon a rug, and under a bed in the room there was found a label put there by the manufacturer or wholesale dealer from whom they had been purchased by Gover, and which contained his name and place of business. There was also found some cost tags containing the wholesale and retail prices of the article, and which were written by Mr. Gover or some of his clerks, including his son above referred to. There was also found a considerable quantity of thread ravellings corresponding exactly to the thread used in fastening the labels, above referred to, on the garment, clearly indicating that the labels had been removed while in the room in which the clothing was found and the removed threading was left in there.

Defendant admitted that he had previously been convicted of housebreaking, but he said it was 25 years since then. In giving an account of the way and manner he acquired the Gover property found in his hotel he stated that shortly prior to the search, at about daybreak one Sunday morning two men arrived at his hotel driving a truck and offered to sell him the property found in his hotel and he offered them $900 therefor, which they accepted and he immediately paid them that amount in cash from his pocket, in which he stated he carried large sums of money, although it was shown that there were two banks in Paintsville; but defendant stated that at that time he was not doing business with either of them but instead he carried his money upon his person. He stated that he did not know who the men were or where they were from, nor did he know or inquire of them the location of their residence; but that their truck bore an Ohio license, and that they said to him that they were going out of business and were then engaged in disposing of their stock. After getting breakfast at his hotel they departed, and he had neither seen nor heard from them since, and that they "looked like" Jews. The only fact which we have rehearsed (besides denying his guilt) that defendant denied was the inquiry made of him as to whether he had any other clothing in his hotel except that found in the show window to it, but which was testified to by five or six commonwealth's witnesses as having

occurred. When asked about the ravellings on the upstairs room floor he did not deny that they were there but said: "I did not see it."

Other proven facts—plus the unnatural and incredible story of the way and manner appellant obtained possession of the property taken from the Gover store—clearly establishes two facts—(1) that he either alone, or with others, feloniously obtained the possession of the goods, or (2) that he knew when he obtained them that they were stolen property. It is, and has always been the rule that the possession of stolen property raises a presumption that the possessor was guilty of having stolen it, but which may be rebutted by a satisfactory explanation of how he obtained the possession. See domestic cases cited under West's Key Number System, vol. 12, Kentucky Digest, under the subject of Larceny, beginning on p. 533. No case to the contrary will be found therein. Two of the cases cited therein are Baker v. Commonwealth, 215 Ky. 772, 286 S. W. 1057, and Davidson v. Commonwealth, 219 Ky. 251, 292 S. W. 754. A great number of later ones are cited in the 1942 cumulative digest to the same effect, some of which are Hamm v. Commonwealth, 270 Ky. 574, 110 S. W. (2d) 305; Rogers v. Commonwealth, 289 Ky. 83, 158 S. W. (2d) 144, and Abshire v. Commonwealth, 281 Ky. 470, 136 S. W. (2d) 567. In a number of them the credibility of defendant's explanation of how he obtained the possession was much more favorable to him than the explanation made by appellant in this case; but in each of them we, nevertheless, sustained the conviction of appellant, on the ground that the jury were authorized from the entire testimony to disregard the explanation because of its evident falsity.

The explanation given by appellant as to how he became possessed of the goods found in his hotel is so fallacious and unbelievable as to amount to no explanation at all. The fantastic story that two persons—whether Jew or Gentile—would dispose of their stock of goods upon retiring from business in the manner stated by appellant, is both unreasonable and preposterous. The fact that appellant carried large sums of ready cash upon his person sufficient to pay the alleged price of $900, is to be likewise characterized; while the articles found in the room other than the stolen goods, indisputably show appellant's activity in destroying their marks of identification. Such undisputed facts furnished abun-

dant ground for the jury to find that appellant's entire story as to how he obtained such possession was false beyond a reasonable doubt. No other explanation was offered by defendant, and in the absence of one, the presumption of guilt stands entirely unrebutted; in which case the jury could return no other verdict than that of guilty, and the court committed no error in submitting that issue by its instruction, and likewise committed no error in overruling defendant's motion for an acquittal.

Wherefore, the judgment is affirmed.