## Clatos v. Commonwealth.

Oct. 27, 1944.

852

J. L. Harrington for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General for appellee.

Opinion of the Court by Perry, Commissioner—Affirming.

On August 16, 1943, the grand jury of Johnson county returned an indictment against the appellant, charging him with the crime of feloniously and knowingly receiving from Lester VanHoose stolen property, to-wit, a Jersey cow, the property of Earl VanHoose, alleged to be of the value of more than $20. On trial he was convicted and sentenced to serve a term of two years in the state penitentiary.

As grounds for reversal of that judgment, appellant contends that the court erred: (1) In overruling his demurrer to the indictment; (2) in overruling his motion, made at the close of the commonwealth's evidence, for a directed verdict for acquittal; and (3) in admitting over appellant's objection incompetent and irrelevant evidence prejudicial to his substantial rights.

The indictment was drawn under section 1199, KS (433.290, KRS), which, as amended by the Act of March 24, 1922, provides that:

"Whoever shall receive stolen goods, chattels or other thing, the stealing whereof is punished as a felony or misdemeanor, knowing the same to be stolen, shall be liable to the same punishment to which the person stealing the same is, by law, subjected. Such offenders may be convicted, though the principal offender has not been convicted. The possession of any stolen goods shall be prima facie evidence of the guilt, under this section, of any person or persons having such possession."

It will be noted that the 1922 Act, c. 113, amending this section, provides that "the possession of any stolen goods shall be prima facie evidence of the guilt * * * of any person or persons having such possession" and, therefore, when stolen property is found in the possession of a person, it is incumbent, or the burden. is cast upon him to show his lack of guilty knowledge or that he legally acquired the property, and if there is any evidence of a probative nature, either direct or circumstantial, tending to combat the claim of legal acquisition, it is an issue for the jury. Conley v. Commonwealth, 230 Ky. 391, 20 S. W. 2d 75; Abshire v. Commonwealth, 281 Ky. 470, 136 S. W. 2d 567; Isom v. Commonwealth, 283 Ky. 775, 143 S. W. 2d 501. While the possession of stolen property shifts the burden to person having possession of making satisfactory explanation, such possession creates only a rebuttable presumption of guilt

rather than a conclusive one. Rogers v. Commonwealth, 289 Ky. 83, 158 S. W. 2d 144.

The degree of the offense of knowingly receiving stolen goods, denounced by this section of the statute, is determined by the value of what is received and, therefore, to constitute the offense of knowingly receiving stolen property a grand larceny or felony, the value of the stolen goods knowingly received by the accused must have been of the value of $20 or more, in that the statute provides that the receiver of the stolen goods with guilty knowledge shall be liable for the same punishment to which the person stealing the same is, by law, subjected. Commonwealth v. Johnson, 181 Ky. 643, 205 S. W. 689. From this it follows that the degree of the offense of knowingly receiving stolen goods is determined by the value of what is received. Chenault v. Commonwealth, 90 Ky. 160, 11 S. W. 442. Also it is said in Newton v. Commonwealth, 158 Ky. 4, 164 S. W. 108, 109, that:

"The gravamen of the offense denounced by this statute is knowingly receiving stolen goods, and is a separate and distinct offense from the larceny itself."

Also, guilty knowledge being an essential element in prosecutions for receiving stolen property, it must be proved on the trial but may be shown by circumstances surrounding the accused's reception of the stolen property and the question of the accused's guilt of the crime of knowingly receiving stolen property is for the jury, there being probative testimony to such effect.

As to the first contention urged by appellant for reversal, that the court erred in overruling his demurrer to the indictment, we are led to conclude, from a careful reading and examination of the indictment, that it alleged all the essential elements of the offense and in so doing notified the defendant in clear and accurate language of the charge preferred against him and, therefore, is not open to the criticism raised by the demurrer that it was fatally defective. A further reason we find for our conclusion reached, that this ground urged by appellant is without merit, is that the record does not disclose that any demurrer was ever filed by the appellant to the indictment and therefore the court could not have committed the alleged error complained of in overruling it.

Appellant's next or second contention is that the court erred in overruling his motion for a peremptory instruction for acquittal made at the close of the commonwealth's testimony. Such contention requires a short statement of the evidence adduced by the commonwealth.

For the commonwealth it was shown by the testimony of its witnesses that on February 16, 1943, some time between midnight and daybreak, Lester VanHoose went to the barn of his brother, Earl VanHoose, and stole therefrom a dark Jersey cow, the property of Earl VanHoose; that he took it to the packing house of the appellant, Steve Clatos and told him that he had stolen it from his brother and that the appellant, notwithstanding his receiving this information that the cow Lester proposed to sell him was stolen property, nevertheless bought and received the cow from Lester VanHoose and at once killed her and turned her over to his butcher, Benny Ward, to skin and cut up, for sale to his customers in his meat market conducted at Paintsville.

It further appears by the testimony of the commonwealth's witness, Morris VanHoose, a brother both of the thief, Lester, and of Earl VanHoose, the owner of the cow, that Lester, after stealing the cow, asked Morris to go with him over to Steve Clatos' packing house, where he had taken the cow, and that he about daylight there joined him and was present at the time that appellant and Lester were trying to make a deal for the sale to appellant of the stolen cow and heard Lester there tell appellant that the dark Jersey cow he was proposing to sell him was the property of Earl VanHoose, which he that morning had stolen from him. Further he testified that when on his way to join Lester at Steve Clatos' packing house, he stopped at the home of Benny Ward, who was getting ready to take his wife to work; that they joined him and as they came down out of the C. C. C. hollow, they met the appellant, "who asked him to go back up and work for him," and that they all went up to the packing house; that the stolen cow had not then been killed, as he saw her when Lester went up the hollow to get her out of the barn near the packing house, where he had put her; that appellant and Lester having apparently come to an agreement for the cow, a few minutes thereafter the appellant killed the cow and hired Benny Ward to help skin and butcher her. Witness

states that all these dealings between the appellant and Lester took place at the packing house about daylight on the morning of February 16, 1943.

Also it appears by the testimony of Benny Ward that when this dark Jersey cow was brought to the appellant's packing house and turned over to him, he said to appellant that "it was Earl's—that it looked like the VanHoose cow." Further he testified that Steve told him to take the cow and kill her and make "beef and pork chop out of her;" that she was a fat cow and was far along with calf, which was "about as big as a dog." He also stated that in addition to this large unborn calf he took from the dark Jersey cow, there were two or three other calves there, which were "made up into hamburger meat." Also he stated that when he first saw this stolen cow, she was in the barn in which appellant kept his beef cattle; that appellant was the first one he heard "name the cow" and also that he saw the VanHoose boys (Lester and Morris) there that morning.

The foregoing evidence of the commonwealth in somewhat confused manner shows this dark Jersey cow, alleged to be of the value of more than $20, was sold to and received by appellant when having full knowledge that she was the stolen property of Earl VanHoose and also that she was seen and found by these commonwealth witnesses in the possession of appellant at his place of business. As stated supra, section 1199 of the statutes, under which appellant was indicted, provides that the "possession of any stolen goods shall be prima facie evidence of the guilt * * * of any person or persons having such possession" and, therefore, when the commonwealth's proof showed the cow in question had been stolen and was found in appellant's possession, the burden was cast upon appellant to show his lack of "guilty knowledge" when receiving the cow that she was stolen. However, appellant, at the conclusion of the introduction of the commonwealth's evidence, sufficiently showing the facts stated, did not undertake to rebut the prima facie evidence made by this proof, by either testifying or introducing any evidence explaining his possession of the stolen property or that the cow was lawfully acquired by him. On the other hand, without attempting to meet the burden of proof cast upon him, he moved for a peremptory instruction of acquittal, contending

that the commonwealth had introduced no evidence to prove that Lester VanHoose stole the cow, or that he delivered it to appellant, Steve Clatos, or that the latter received said cow, knowing the same to have been stolen.

In view of the commonwealth's proof, as herein above recited, we are constrained to conclude that the contention of appellant here made is without basis or merit and in direct contravention of the express provision of the statute, that the possession of any stolen goods shall be prima facie evidence of the guilt of any person or persons having such possession.

In addition to the fact that section 1199 KS, makes the possession of stolen property prima facie evidence of its having been knowingly received as such, the circumstances surrounding appellant's receiving this cow and his purchase of it, with guilty knowledge of her theft, the unusual hour at which the transaction took place and the hurried killing and skinning of the cow, serving to destroy evidence helpful for her later identification, when all are considered together, not only justified submission of the case to the jury on the issue of the knowledge of appellant that the cow he bought and received from Lester VanHoose was stolen property but was also amply sufficient to sustain the verdict of the jury upon such evidence.

Appellant further complains that the verdict should be reversed because of the court's alleged error in overruling appellant's objection to Benny Ward's testimony that he was instructed to and did make up into hamburger the unborn calf he removed from the cow, which he sold to his trade. While we concur in appellant's contention that the trial court should have sustained the objection to that evidence, as that act was not a part of the offense for which appellant was indicted, we do not conceive the erroneous ruling of the court in admitting it over the objection of appellant as being of such a serious nature as to materially prejudice appellant's substantial rights. It is not every error that will authorize reversal of a judgment in a criminal case. To authorize a reversal, it must affirmatively appear that the substantial rights of the defendant have been prejudiced. Section 340, Civil Code of Practice.

Section 1199 KS, provides that the one receiving stolen goods, "the stealing whereof is punished as a

858

felony or misdemeanor, knowing the same to be stolen, shall be liable to the same punishment to which the person stealing the same is, by law, subjected." The penalty prescribed by section 1194 KS (433.220 KRS) for the offense of grand larceny, or of taking money or other property of the value of $20 or more, is confinement in the penitentiary for not less than one nor more than five years.

The punishment to which the appellant was here sentenced was two years' confinement in the penitentiary. The jury could hardly, under the circumstances shown by the evidence attending appellant's receipt of this Jersey cow, have given a lighter punishment or fixed a shorter term of imprisonment than the two year term imposed upon appellant, even had the complained of improper evidence not have been admitted. It could have, under the grand larceny statute, imposed a punishment of five years' imprisonment in the penitentiary had it become incensed and prejudiced against appellant by the admission of the complained of evidence. Therefore it does not affirmatively appear to us that the substantial rights of the defendant have been prejudiced by this erroneous ruling of the court and, finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.