**Elmer DAWES, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 28, 1960.

As Modified on Denial of Rehearing
Oct. 6, 1961.

Holland G. Bryan, Richard R. Bryan, Paducah, for appellant.

John B. Breckinridge, Atty. Gen., Martin Glazer, Asst. Atty. Gen., for appellee.

BIRD, Chief Justice.

Elmer Dawes was convicted of knowingly receiving stolen property under KRS 433.290. His punishment was fixed at confinement in the penitentiary for a period of three years. He appeals.

A new television set and some new radios were stolen in Paducah, Kentucky, from a dealer. They were hidden in some weeds between the floodwall and the Tennessee River. The place of concealment is located near the intersection of a dirt road and a

gravel road also located between the flood-wall and the river. The stolen property was discovered by chance. The discovery was reported to the police by the discoverer who went with a Paducah policeman to the floodwall where he undertook to point out the place of concealment. While he was doing this two men came from the weeds carrying the television toward an automobile parked on the dirt road just off the gravel road. The trunk lid of the car was open. It is undisputed that the car was that of the appellant. It is likewise undisputed that the television was stolen property.

The policeman testified that the man helping Dawes with the television saw him approaching with a drawn gun, dropped his end of the television and ran. He testified that Dawes held his end for a second, dropped it and "trotted" to his car. He testified further that Dawes got in the car, got out immediately to get his car keys from the trunk lid and got in again. The officer went on to say that Dawes "fired" up the car, that the wheels began spinning on the slick mud surface of the road and that he was thus able to get between him and an exit. The officer further related that he went with Dawes to the place where the television was carried from the bushes and there he found the stolen radios. His testimony further disclosed that the television had not been fully unwrapped, that the "skids" and "packing baffles" were still intact, that the electrical cords were still wrapped as shipped and that much of the cardboard casing was still attached.

■ Dawes complains that the verdict is not supported by the evidence and that he should have been granted a directed verdict. The evidence heretofore related clearly establishes that he had personal possession of stolen property. That he was not in sole possession is immaterial.

To warrant a conviction under KRS 433.290 the receiver must know the property to be stolen. However, the same statute provides that possession shall be "prima facie evidence of his guilt." He is presumed to know the property is stolen and, without sufficient explanation, his possession of the property establishes the knowledge required for conviction. If there is any evidence of probative value, either direct or circumstantial, tending to disprove the explanation it is an issue for the jury. Clatos v. Commonwealth, 298 Ky. 851, 184 S.W.2d 125.

■ Let us examine his explanation. He states that two Negroes came to his home and proposed to sell him a television set. Not having one, he became interested and, upon inquiry, he was assured that it was not stolen. One of the Negroes explained that he and his wife were having trouble and that he smuggled it out of his home to sell and "raise cash to go away." Dawes contends that he went to the weed patch with one of the Negroes and that his possession was limited solely to helping the Negro carry the set into the open so that he could inspect it, during which time he did not know that it was stolen. It was after this possession that Dawes discovered the uncrated condition of the set and, upon further inquiry, got the Negro's admission that the set was stolen. He says that he and the Negro put the set down and that he then told the Negro that he wanted no part of it. He says it was at this time the officer made his appearance and that the Negro fled.

Not only is this statement in conflict with the direct testimony of the officer but there are circumstances also calculated to cause a jury to question the truth of the explanation. A jury may have well wondered why Dawes could not in open daylight have discovered the set's crated condition while in the weed patch and before taking any possession of it. The jury too may have looked rather suspiciously at the open trunk toward which the set was being carried. The Negro story is directly contradicted by the officer who stated that the second man was a white man. The testimony, the circumstance, and the general flimsiness of the explanation were enough to warrant a submission to the jury. It was

the jury's province to determine the sufficiency of the explanation and it having done so this Court will not interfere. The elements of the crime were proven and the court correctly submitted the case to the jury.

■ The trial court limited the closing argument to fifteen minutes. Dawes claims this limitation was an abuse of discretion.

There were five witnesses who had testified concerning the same facts on another trial. The trial consumed only three hours. The issues were clear and simple. The evidence, though conflicting, was in no way technical or confusing. To allot time for argument is within the sound discretion of the trial court and here it was not abused.

■■ The trial court refused to permit the jury to view the scene of the crime as permitted under Section 236 of the Criminal Code of Practice. The trial court also refused to permit the jury to view the Dawes car. It is argued that this was an abuse of discretion. Both, we think, were so adequately described in the testimony that viewing would have been useless. It is our conclusion that there was no abuse of discretion in the refusal. It was not shown that Dawes ever had possession of the radios and the court would not permit them to be introduced into the evidence. However, they were left in the courtroom near the television during the remainder of the trial. Dawes contends on appeal that this was error and that he was prejudiced by it. Upon objection the radios should have been removed from the presence of the jury. However, in this case and without objection, the police officer testified in detail about finding the radios in the weed patch at the same place from which Dawes helped to carry the television. With such testimony in the record Dawes was not prejudiced by the presence of the radios in the room.

■ Dawes contends that the indictment was not properly read to the jury as required by Section 219 of the Criminal Code of Practice. It appears that the indictment contained other counts previously adjudicated or dismissed. These counts were not read to the jury and properly so. We find no merit in this contention.

■ Dawes complains too that the trial court erred in not giving the whole law of the case insomuch as he did not instruct on the lesser offense.

In Clatos v. Commonwealth, supra [298 Ky. 851, 184 S.W.2d 126], we said:

"The degree of the offense of knowingly receiving stolen goods, denounced by this section of the statute, is determined by the value of what is received and, therefore, to constitute the offense of knowingly receiving stolen property a grand larceny or felony, the value of the stolen goods knowingly received by the accused must have been of the value of $20 or more, in that the statute provides that the receiver of the stolen goods with guilty knowledge shall be liable for the same punishment to which the person stealing the same is, by law, subjected. Commonwealth v. Johnson, 181 Ky. 643, 205 S.W. 689. From this it follows that the degree of the offense of knowingly receiving stolen goods, is determined by the value of what is received. Chenault v. Commonwealth, 90 Ky. 160, 11 S.W. 442. Also it is said in Newton v. Commonwealth, 158 Ky. 4, 164 S.W. 108, 109, that:

" 'The gravamen of the offense denounced by this statute is knowingly receiving stolen goods, and is a separate and distinct offense from the larceny itself.' "

■ The undisputed proof in this case shows that the property received was of greater value than twenty dollars. Appellant insists however that an instruction should have been given under KRS 433.240, which reads as follows:

"Any person who, unlawfully but without felonious intent, takes, carries away, defaces or damages any property or thing of value not his own shall be fined not less than ten dollars nor more than two thousand dollars."

We do not agree. The gravamen of the present action is the receiving of property heretofore taken unlawfully. KRS 433.240 applys only to actions where the gravamen is the unlawful taking. It is the Court's opinion that the trial judge gave the proper instructions.

The judgment is affirmed.